**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DANIELLE IZZO,**

                                 **Plaintiff,**

                  **v.**                                               **5:07-CV-1211
                                                                                (FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                 **Defendant.**
_____

**APPEARANCES**                                     **OF COUNSEL**

**FINE, OLIN & ANDERMAN, LLP**          **THOMAS P. WELCH, ESQ.**
716 7th North Street
Liverpool, New York 13088
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **JOHN M. KELLY, ESQ.**
**OFFICE OF REGIONAL
GENERAL COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g) and § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB"). Plaintiff requests that the Court reverse the Administrative Law Judge's ("ALJ") decision or remand the case to the ALJ for further evaluation of the evidence.

Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the pleadings or, in the alternative, for summary judgment. *See generally* Dkt. Nos. 15, 16.

**II. BACKGROUND**

**A.    Procedural history**

Plaintiff, then twenty-six, filed an application for DIB on June 21, 2005. *See* Administrative Record ("AR") at 46-48. In her disability report, Plaintiff cited lower back problems as her disabling condition. *See id*. at 69. Plaintiff asserted that her back problems caused her to experience pain from her back to her toes, as well as in her neck and left arm. *See id*. at 70. As a result of this pain, Plaintiff had difficulty moving her neck. *See id*. The Social Security Administration denied Plaintiff's application for DIB on October 3, 2005. *See id*. at 23-26. Plaintiff filed a timely request for a hearing on November 25, 2005, which was held before ALJ Robert Gale, in Syracuse, New York, on January 31, 2007. *See id*. at 30, 263. Attorney Thomas Welch represented Plaintiff, who appeared and testified. *See id*. at 263, 266.

ALJ Gale considered the case *de novo* and issued a written decision denying Plaintiff's application on May 22, 2007.  *See* AR at 13-21.  In his decision, ALJ Gale stated that he carefully considered all medical opinions regarding the severity of Plaintiff's impairments and made the following findings:

> 1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2) Plaintiff has not engaged in substantial gainful activity since March 4, 2005, the alleged onset date.
>
> 3) Plaintiff experiences degenerative disc disease of the cervical and lumbar spine, a severe impairment.
>
> 4) Plaintiff's impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").
>
> 5) Plaintiff retains the residual functional capacity ("RFC") to lift/carry twenty pounds occasionally and ten pounds frequently, to sit for six hours in an eight-hour workday, stand/walk for four hours in an eight-hour workday, and can occasionally engage in postural activities, except those involving ladders and scaffolds.  In addition, Plaintiff has no significant limitations on her ability to perform the mental demands of work.
>
> 6) Plaintiff is capable of performing past relevant work as a customer service representative for a telephone company since that work does not involve activities that Plaintiff's RFC precludes.
>
> 7) Plaintiff has not been under a disability, as defined by the Act from March 4, 2005, through May 22, 2007, the date of the ALJ's decision.

*See* AR at 15-21.

The ALJ's decision became the Commissioner's final decision on September 17, 2007, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 4.

Plaintiff commenced this action on November 15, 2007, *see* Dkt. No. 1, and filed a supporting brief on August 19, 2008, *see* Dkt. No. 16. Defendant filed its brief on July 7, 2008. *See* Dkt. No. 15.

## B.     Plaintiff's medical history

In 2003, Plaintiff slipped on ice and injured her back; she eventually required an L4-L5 bilateral microdiscectomy, which Dr. Stephen Robinson performed on November 25, 2004. *See* AR at 96-99. Plaintiff returned to work on January 27, 2005. *See id*. at 128. On March 4, 2005, while at work for AT&T, Plaintiff sustained an injury to her back and neck. *See id*. at 103. Plaintiff saw Dr. Robinson, who determined that she was neurologically stable and advised her to return to work for limited duty and to follow up in six weeks. *See id*. at 127. However, Plaintiff returned to Dr. Robinson nine days later, complaining of severe neck and lower back pain. *See id*. at 120-21. In May of 2005, in addition to diagnosing her with cervical and lumbar radiculopathy, Dr. Robinson recommended MRIs and physical therapy for Plaintiff. *See id*. at 108, 113, 116.

In July of 2005, Plaintiff saw Dr. Daniel Carr for an evaluation. *See* AR at 103-06. Dr. Carr recommended an MRI of Plaintiff's cervical spine, as well as physical therapy. *See id*. at 106. Dr. Carr characterized Plaintiff's limitations as a moderate partial disability. *See id*.

Plaintiff underwent an MRI of her cervical spine on August 22, 2005; Dr. E. Mark Levinsohn reviewed the MRI and noted that it revealed slight disc protrusion at C3-C4. *See* AR at 243-44. The MRI also revealed positive Phalen's carpal tunnels bilaterally and some radicular findings at C6-C7, but no disc pathology. *See* AR at 240-41. Dr. Robinson noted the slight protrusion and diagnosed cervical radiculitis, carpal tunnel syndrome, and cubital tunnel syndrome,

related to Plaintiff's Worker's Compensation case. *See id*. at 240.

Plaintiff saw Dr. Jeanne Shapiro for a consultative psychiatric evaluation in September 2005. *See* AR at 186-90. This examination did not result in a psychiatric diagnosis. *See id*. at 189. Dr. Shapiro noted that Plaintiff's pain interfered with her concentration, attention, and her interaction with others. *See id*.

Dr. Robinson issued a medical assessment report regarding Plaintiff's condition on September 26, 2006. *See* AR at 221-28. Dr. Robinson opined that Plaintiff suffered from severe pain and fatigue and that Plaintiff could not obtain relief from her pain via medication without experiencing unacceptable side effects. *See id*. at 223. Dr. Robinson further asserted that Plaintiff could sit, stand, or walk for a maximum of zero to one hours in an eight-hour workday and that she could occasionally lift and/or carry a maximum of zero to five pounds. *See* AR at 223, 224. Dr. Robinson concluded that Plaintiff's condition essentially precluded her from grasping, turning objects, using her hands for fine manipulation, and using her arms for reaching. *See* AR at 225. Dr. Robinson opined that Plaintiff's symptoms would probably worsen if she entered a competitive work environment and that, due to her chronic pain, Plaintiff could not tolerate even low stress. *See id*. at 226, 227.

During Plaintiff's period of alleged disability, she also received examination, treatment, and medication from her primary care physician, Dr. Bruce Silverstein. *See* AR at 150-55, 210-20, 245-57. At various appointments with Dr. Silverstein, Plaintiff complained of widespread pain in her neck, back, head, arms and shoulders, as well as dizziness. *See* AR at 152-53, 210, 212, 214, 218, 257. Dr. Silverstein completed a medical assessment report regarding Plaintiff's condition on August 26, 2006. *See id*. at 245-52. He determined that Plaintiff suffered from a cervical strain,

paresthesia, bilateral arm and shoulder pain, and lumbar sacral strain. *See id*. at 245. Dr. Silverstein found a decreased range of motion, but intact motor and sensory functions. *See id*. Dr. Silverstein characterized Plaintiff's pain and fatigue as unable to be relieved by medication without unacceptable side effects. *See id*. at 247. Dr. Silverstein concluded that Plaintiff could sit, stand, or walk for a maximum of zero to one hours in an eight-hour workday. *See id*. at 247. He further advised that Plaintiff would be significantly limited in, but not precluded from, grasping, turning objects, using her fingers and hands for fine manipulation, and using her arms for reaching. *See* AR at 249. Dr. Silverstein also determined that Plaintiff's symptoms would increase if she entered a competitive work environment and that Plaintiff could not perform a full-time job that required sustained activity. *See id*. at 250. He opined that Plaintiff's symptoms of pain and fatigue frequently interfered with her attention and concentration, *see id*, and that Plaintiff could not tolerate even low stress levels because of her agoraphobia, depression, and anxiety, *see id*. at 250-51.

### III. DISCUSSION

**A.    Standard of Review**

*1. Substantial evidence*

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

However, where the court has

> "a reasonable basis for doubt whether the ALJ applied correct legal
> principles, application of the substantial evidence standard to uphold
> a finding of no disability creates an unacceptable risk that a claimant
> will be deprived of the right to have her disability determination made
> according to the correct legal principles."

*Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quotation omitted).

Therefore, remand is appropriate where a court cannot ascertain what weight should be assigned to pieces of evidence that the ALJ did not properly evaluate or whether clarification of the record might change the weight that the ALJ assigned to various pieces of evidence. *See id.*

### *2. Five-step determination of disability*

To be eligible for DIB, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA.
> *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not
> disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the
> claimant has a severe impairment or combination of impairments. *See*
> 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*
>
> 3) If the claimant has a severe impairment, the ALJ determines if the
> impairment meets or equals an impairment found in the appendix to
> the regulations (the "Listings"). If so, the claimant is disabled. *See*
> 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings,

>the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e). If so, she is not disabled. *See id*.
>
>5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See id*. A claimant is only entitled to receive disability benefits if she cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted).

**B.    The ALJ's weighting of the medical evidence in the record**

The ALJ must give controlling weight to the opinion of a treating physician where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R. § 404.1527(d)(2).

If an ALJ does not give controlling weight to a treating physician's medical opinion, the weight he accords that opinion depends on several considerations. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). These considerations are """(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.""" *Audi*, 2009 WL 3199481, at *13 (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R.

§ 404.1527(d)(2).  Moreover, the ALJ must "'give good reasons'" for the weight he accords to a treating physician's medical opinion.  *See Audi*, 2009 WL 3199481, at *13 (quotation omitted).

Where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion.  *See* SSR 96-2p, 1996 WL 374188, *5 (July 2, 1996); *see also Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions as 20 C.F.R. § 404.1527(d) requires).

In the instant matter, substantial evidence supports the ALJ's assignment of little weight to Dr. Silverstein's and Dr. Robinson's opinions.  These opinions are not consistent with the record as a whole.  First, Plaintiff's statements regarding her daily activities – that she shops, cares for her dog, prepares some meals, and drives – contradict these medical opinions because these statements indicate that Plaintiff is capable of at least some lifting.  *See* AR at 277-80.  Plaintiff also testified that she was able to sit for one to two hours of an eight-hour workday, whereas Drs. Silverstein and Robinson concluded that she could only sit between zero and one hours.  *See id.* at 223, 247, 281.  Next, the ALJ found no evidence in the record of leg weakness or a sensory or reflex defect in Plaintiff's lower extremities, which indicated that Plaintiff might be able to stand or walk for longer than Drs. Silverstein and Robinson opined.  *See id.* at 20.  Since "[t]he Secretary is entitled to rely not only on what the record says, but also on what it does not say[,]" this constitutes substantial evidence to support the ALJ's weight assessment.  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted).  In addition, Dr. Robinson's treatment notes contradicted his overall opinion where the notes indicated that Plaintiff had no neurological symptoms and retained a full range of motion in her upper extremities.  *See id.* at 112-13.  Finally, the ALJ was correct not to rely

on Dr. Robinson's finding of disability because Dr. Robinson gave his opinion in a Worker's Compensation context. Since the standards for disability under Worker's Compensation differ from the standards that govern DIB, medical opinions given in a Worker's Compensation context are not binding on an ALJ. *See Mattison v. Astrue*, No. 07-CV-1042, 2009 WL 3839398, *13 (N.D.N.Y. Nov. 16, 2009) (citations omitted).

Accordingly, the Court finds that the ALJ properly weighed the medical evidence in this case.

**C.     The ALJ's consideration of Plaintiff's subjective complaints of pain**

A plaintiff's statements about her condition, on their own, are not enough to establish disability. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996). The ALJ must consider a plaintiff's observable signs and laboratory findings, as well as reported symptoms. *See* 20 C.F.R. § 404.1529. A plaintiff's subjective complaints of pain and limitation are "'entitled to great weight where . . . [they are] supported by objective medical evidence.'" *Futia v. Astrue*, No. 1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y. Feb. 19, 2009) (quoting *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).

If a plaintiff's testimony is not fully supported by clinical evidence, the ALJ must employ a two-step process to evaluate the plaintiff's reported symptoms. *See* SSR 96-7p, at *2. First, the ALJ must determine if the plaintiff has medically determinable impairments that could produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(a); *see also* SSR 96-7p, *2. Second, if impairments do exist, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the plaintiff's ability to work. *See* C.F.R.

§ 404.1529(a); *see also* SSR 96-7p, at *2.  In so doing, the ALJ must consider (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to relieve her pain or other symptoms; (v) other treatment that the claimant receives or has received to relieve her pain or other symptoms; (vi) any measures that the claimant takes or has taken to relieve her pain or other symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to her pain or other symptoms.  *See* 20 C.F.R. §§ 416.929(c)(3)(i)-(vii); *see also* SSR 96-7p, at *2.

In addition, where an ALJ assesses a plaintiff's subjective statements of pain in light of medical evidence that indicates that the plaintiff can work and finds that the plaintiff's statements cannot overcome the medical evidence to the contrary, "there is no need for further articulation by the ALJ regarding the plaintiff's credibility."  *Francis v. Astrue*, No. 3:09-CV-1826, 2010 WL 3432839, *4 (D. Conn. Aug. 30, 2010).

In this case, the ALJ found that Plaintiff's statements regarding her limitations were not entirely credible.  *See* AR at 19.  The ALJ determined that Plaintiff suffered from a medically determinable impairment that could reasonably be expected to produce her complained-of symptoms.  *See id*.  However, he also found that Plaintiff's statements regarding the severity of those symptoms were less than credible.  *See id*.  The ALJ reasoned that her complaints of severely limiting back pain were inconsistent with an MRI which found a disc protrusion that Dr. Robinson described as "minimal."  *See id*.  The ALJ also characterized the clinical findings regarding

Plaintiff's condition as "minimal."[1]  *See id.*

The ALJ's assessment of Plaintiff's statements of physical limitation finds support from substantial evidence in the record.  First, the record contains medical opinions that characterize some of Plaintiff's symptoms as mild or moderate, so her statements are not fully supported by clinical evidence.  *See* AR at 104, 219.  Moreover, Plaintiff's activities indicate that she has the capacity to function on a daily basis.  She engages in activities such as cooking, driving, self-care, and caring for her dog, that involve some amount of concentration, standing, walking, and lifting.[2]  *See* AR at 277-80.  Since daily activities are one of the factors by which the ALJ should measure a claimant's statements of limitation, this is an appropriate analysis; and substantial evidence supports the ALJ's conclusion.  *See* 20 C.F.R. §§ 416.929(c)(3) (i)-(vii); *see also* SSR 96-7p, at *2.

Next, the ALJ found that Plaintiff's statements of limitation regarding her psychiatric condition were inconsistent with substantial medical evidence.  *See* AR at 19.  The ALJ's assessment of Plaintiff's statements of psychological limitation also finds support from substantial evidence in the record.  Again, Plaintiff's daily activities cannot overcome medical evidence to the contrary,[3] where she maintains social contacts with her sister and her neighbor and is apparently

---

[1] Although the ALJ did not specify to which findings he referred, Dr. Carr found that Plaintiff's back rotation had been "mildly decreased."  *See* AR at 104.  Dr. Silverstein also characterized some of Plaintiff's pain as "mild/moderate."  *See id.* at 219.

[2] Although the ALJ included his analysis of Plaintiff's daily activities in a different portion of his opinion, the Court may use that analysis in considering the ALJ's determination of Plaintiff's credibility.  The Second Circuit has held that, where the ALJ does not explain his rationale for a particular decision, courts may "look to other portions of the ALJ's decision and to clearly credible evidence" in order to determine if substantial evidence supported the ALJ's conclusion.  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).

[3] The medical evidence that Plaintiff must overcome is the lack of a psychiatric diagnosis from Dr. Shapiro, a psychiatrist with whom Plaintiff consulted.  *See* AR at 189.  Under *Dumas*,

(continued...)

able to leave her apartment to conduct her business as necessary. *See* AR at 278, 283-84.

Accordingly, the Court upholds the ALJ's assessment of Plaintiff's credibility.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 1, 2011
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

³(...continued)
the ALJ may rely on what the record does not indicate in addition to what it does. *See Dumas*, 712 F.2d at 1553. Also notable, but less important than Dr. Shapiro's non-diagnosis, Dr. Robinson found Plaintiff's mood to be appropriate during their appointments. *See* AR at 108-45.